**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| VEENASA THATIKONDA, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 19-685 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 15, 16 |
| | : | | |
| UNITED STATES CITIZEN AND, | : | | |
| IMMIGRATION SERVICES, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**I. INTRODUCTION**

This case concerns two H-1B petitions filed by Plaintiff Synergy Technologies LLC ("Synergy") on behalf of two beneficiaries, fellow Plaintiffs Veenasa Thatikonda and Premkumar Venkatraman.  After the petitions were denied by the Defendant, United States Citizen and Immigration Services ("USCIS"), Plaintiffs sued in this Court, arguing that the agency's decisions violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.* While this case was pending, USCIS reopened both petitions, approved Ms. Thatikonda's, and re-denied Mr. Venkatraman's.  Currently pending before the Court is Plaintiffs' motion for a preliminary injunction, which primarily seeks reconsideration of Mr. Venkatraman's petition and approval of Ms. Thatikonda's (the motion was filed shortly before USCIS approved her petition).  For the reasons explained more fully below, the Court finds the motion moot as to Ms. Thatikonda's petition.  As to Mr. Venkatraman's, the Court grants the motion in part and denies it in part.

## II. BACKGROUND

### A. Legal Framework

Under the H-1B program, non-citizens can temporarily work in the United States if they are sponsored by an employer in a "specialty occupation." Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(H)(i)(b). For the purposes of the H-1B program, the INA defines a "specialty occupation" as one that requires "(A) theoretical and practical application of a body of highly specialized knowledge[,] and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1). In line with that statutory definition, the applicable regulations define a specialty occupation as one that "requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent," plus "theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts." 8 C.F.R. § 214.2(h)(4)(ii) ("Definitions"). The next subparagraph in the regulations provides more specific criteria (or prerequisites) as to what qualifies:

> To qualify as a specialty occupation, the position must meet one of the following criteria:
> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
> (3) The employer normally requires a degree or its equivalent for the position; or
> (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

*Id.* § 214.2(h)(4)(iii)(A) ("Criteria for H-1B petitions involving a specialty occupation"); *see also Defensor v. Meissner*, 201 F.3d 384, 387 (5th Cir. 2000) ("assum[ing] arguendo that § 214.2(h)(4)(iii)(A) creates [a] necessary and sufficient condition[] for the category of 'specialty occupation'" but acknowledging that the provision could also "be read as merely an additional requirement that a position must meet, in addition to the statutory . . . definition").

### B.  Procedural History

The complaint in this case was filed on March 11, 2019.  Compl., ECF No. 1.  At that point, both Ms. Thatikonda's and Mr. Venkatraman's H-1B petitions had been recently denied— hers on January 10, 2019 and his on February 28, 2019.  *Id.* ¶¶ 5–6.  The complaint alleged that "[b]oth petitions were denied for the same reason, namely, because USCIS arbitrarily and capriciously determined that no employer-employee relationship existed between Plaintiff Synergy Technologies and Plaintiffs Thatikonda and Venkatraman, respectively."  *Id.* ¶ 4.

Despite the filing of the suit, the situation remained fluid as to both beneficiaries.  Before filing an answer here, USCIS reviewed Mr. Venkatraman's denial, reopened the petition, and issued a new Request for Evidence ("RFE").  Def.'s Sixth Mot. for Extension of Time ¶ 3 ("Defs.' Sixth Ext. Mot."), ECF No. 14.  After considering the additional evidence provided, USCIS again denied the petition on February 14, 2020.  *See* Pls.' Mot. for Prelim. Inj. Ex. 7 ("USCIS Decision"), ECF No. 15-9.  Ms. Thatikonda's petition proceeded on its own track.  When the complaint was filed, her petition was pending on appeal before the USCIS's Administrative Appeals Office ("AAO").  Def.'s Sixth Ext. Mot. ¶ 3.  On October 4, 2019, the AAO resolved the appeal and remanded the petition to USCIS with instructions for further review.  *Id.*  USCIS subsequently issued an RFE on December 12, 2019, *id.*, to which Plaintiffs responded on February 5, 2020, Pls.' Mot for Prelim. Inj. at 1 ("Pls.' Mot."), ECF No. 15.

Against this backdrop, on February 28, 2020, Plaintiffs filed the presently pending motion for a preliminary injunction. Pls.' Mot. The motion primarily seeks (1) rescission of the decision denying Mr. Venkatraman's H-1B petition and (2) approval of Ms. Thatikonda's H-1B petition. *Id.* at 1. As to Mr. Venkatraman, the memorandum in support requests further relief: it seeks an order requiring USCIS "to promptly re-adjudicate and approve Mr. Venkatraman's H-1B petition" and "to postpone the effective date of its denial of Plaintiff's H-1B Petition, and grant temporary status and visa approval . . . to prevent irreparable injury, pending conclusion of the review proceedings under 5 U.S.C. § 701 *et seq.*" Pls.' Mem. at 34.

On March 6, 2020, Defendants filed their opposition, making separate arguments as to each beneficiary. Defs.' Opp'n to Pls.' Mot., ECF No. 17. As to Ms. Thatikonda, Defendants represented that her petition had, in fact, been approved on March 5, 2020, and that any motion seeking injunctive relief in her respect was therefore moot. *Id.* at 1. As to Mr. Venkatraman, Defendants argued that Plaintiffs had not demonstrated that they were likely to succeed on the merits of their APA claim or that Mr. Venkatraman would suffer irreparable injury in the absence of a preliminary injunction. *Id.* Defendants also objected to the extent of relief sought by Mr. Venkatraman. *Id.* Plaintiffs have not filed a reply, and the motion is now ripe for the Court's consideration.[1]

### III.  LEGAL STANDARD

"A party seeking a preliminary injunction must make a 'clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence

---

[1] Also pending before the Court is Plaintiffs' Consent Motion for Leave to File Unredacted Exhibits Under Seal, ECF No. 16. Upon consideration of that motion, the Court grants it and permits Plaintiffs to file under seal an unredacted copy of the portion of the administrative record that contains Plaintiffs' personal information.

of preliminary relief, a balance of the equities in its favor, and accord with the public interest.'" *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). When weighing these four factors, courts in this Circuit have traditionally applied a "sliding-scale" approach, under which "a strong showing on one factor could make up for a weaker showing on another." *Id.* at 7 (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). But this approach has been recently questioned, at least to a degree. *See, e.g.*, *Sherley*, 644 F.3d at 392–93 (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20–24 (2008)). Whatever the precise calculus, likelihood of success on the merits and likelihood of irreparable harm are both particularly important considerations. *See Ramirez v. USCIS*, 310 F. Supp. 3d 7, 17 (D.D.C. 2018). Indeed, it seems clear that the moving party must make some showing as to each of those two factors in order to prevail. *See, e.g.*, *Sherley*, 644 F.3d at 393 (reading *Winter* "to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction'" (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (2009) (concurring opinion))); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.") (citing *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1210–11 (D.C. Cir. 1989)).

## IV.  ANALYSIS

### A.  Motion as to Ms. Thatikonda

As explained, USCIS indicates that it recently approved Ms. Thatikonda's petition, Defs.' Opp'n at 4, and attaches a copy of the Form I-797B approval notice as an exhibit to its brief in opposition, *id.* Ex. A ("USCIS Approval Notice"). In general, "[w]here the plaintiff has

5

recovered all it has sought, no court action can provide further relief and the case is moot." *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 954 (D.C. Cir. 2016). In their motion for a preliminary injunction, Plaintiffs sought the approval of Ms. Thatikonda's petition and did not argue for any other related relief.[2] *See* Pls.' Mem. at 34–35. As a result, the Court concludes that they have "been given everything [they] asked for" with respect to Ms. Thatikonda and that this aspect of their motion is moot. *Noble v. Sombrotto*, 525 F.3d 1230, 1241 (D.C. Cir. 2008); *see also Blackman v. District of Columbia*, 72 F. Supp. 3d 249, 251 (D.D.C. 2014) (denying motion for a preliminary injunction as moot "because [applicant] has already received his requested relief"). If the Court has misunderstood the facts on the ground or the extent of the requested relief, Plaintiffs remain free to renew their motion for a preliminary injunction.

### B. Motion as to Mr. Venkatraman

Mr. Venkatraman's petition, however, was—and remains—denied. The Court will therefore evaluate whether Plaintiffs have met the requirements for a preliminary injunction specifically as to him. *Cf. Adams v. Freedom Forge Corp.*, 204 F.3d 475, 485 (3d Cir. 2000) (explaining that where there are multiple applicants for a preliminary injunction, showing irreparable harm requires either (1) individualized proof by each applicant or (2) a reasonable basis for inferring that all applicants necessarily face some form of irreparable harm).

#### 1. Likelihood of Success on the Merits

Mr. Venkatraman's APA challenge ultimately hinges on whether he can show that the denial of his petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in

---

[2] Plaintiffs did request, in passing, "attorney's fees and costs of Court under the Equal Justice Act" and "such other and further relief as the Court deems proper," but made no argument as to why a fee award would be justified or what other relief might be appropriate. Pls.' Mem. at 35.

accordance with law." 5 U.S.C. § 706(2)(A).  Review under that standard is "highly deferential." *AT&T, Inc. v. FCC*, 886 F.3d 1236, 1245 (D.C. Cir. 2018) (quoting *Nat'l Tel. Coop. Ass'n v. FCC*, 563 F.3d 536, 541 (D.C. Cir. 2009)).  To pass muster, an agency must have only "'examine[ed]' the relevant factors and data and articulate[d] a 'rational connection' between the record and [its] decision." *Id.* (first quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); then quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).  At the same time, though, judicial review is not a rubber stamp: a court will find an agency acted arbitrarily or capriciously "if it has relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation either contrary to the evidence before the agency or so implausible as to not reflect either a difference in view or agency expertise." *Defs. of Wildlife v. Jewell*, 815 F.3d 1, 9 (D.C. Cir. 2016).

  Here, USCIS denied the petition because it found that "[t]he record, as presently constituted, is insufficient to establish that the position offered to the beneficiary qualifies as a specialty occupation and that the beneficiary will perform services in a specialty occupation for the requested period of intended employment." USCIS Decision at 10.  Specifically, USCIS faulted the petition for lacking "sufficient consistent, verifiable, and credible evidence to document what services the beneficiary will actually perform during his placement." *Id.* at 9.  USCIS focused on one particular inconsistency: the petition described the sought position as "Hadoop Administrator II," while other supporting documents described the position as "Senior IT Developer." *Id.*  Mr. Venkatraman attempted to clarify the discrepancy (explaining that "while there are distinct differences between the two positions, both Hadoop Developer and

Hadoop Administrator are in fact very closely related positions"), but USCIS found that this explanation merely "add[ed] additional discrepancies to the record." *Id.* at 8.

Separate from the details of USCIS's analysis, however, looms a larger question—whether its searching inquiry into the specific services that Mr. Venkatraman would perform was necessary or consistent with the broader statutory and regulatory framework. A recent case from this District, *Itserve All., Inc. v. Cissna*, No. 18-cv-2350, 2020 WL 1150186 (D.D.C. Mar. 10, 2020), indicates that it was not.[3] There, the plaintiffs had challenged, among other things, a USCIS requirement (articulated in a 2018 Policy Memorandum[4]) that a petitioner must "prove non-speculative work in a specialty occupation for the entirety of a visa," arguing that this "new requirement" was "not supported by statute or regulation and exceeds the authority of [US]CIS." *Id.* at *9, *18. In relevant part, Judge Collyer agreed with the plaintiffs. *Id.* at *18–19. She reasoned that "[n]othing in [the statutory] definition requires specific and non-speculative qualifying day-to-day assignments for the entire time requested in the petition." *Id.* at *19. And she rejected USCIS's attempt to ground the requirement in the four independent criteria set forth in 8 C.F.R. § 214.2(h)(4)(iii)(A). *Id.* As she noted, only one of the four criteria mentions specific duties, and this isolated reference could not "be expanded, under the guise of policy, to require advance notice of all assignments and work duties at the time of petition." *Id.* Judge Collyer concluded that USCIS's interpretation of the relevant regulations were plainly erroneous,

---

[3] Plaintiffs drew attention to this case in a notice of intervening authority. *See* ECF No. 19.

[4] Judge Collyer in *Itserve* referred to this to as the "non-speculative work requirement." *Itserve*, 2020 WL 1150186 at *8. As the Memorandum makes clear, USCIS understood it to logically flow from the more general requirement that a petitioner be employed in a specialty occupation: "The beneficiary will be employed in a specialty occupation. This means that the petitioner has specific and non-speculative qualifying assignments in a specialty occupation for the beneficiary for the entire time requested in the petition." *Id.* at *9 (quoting CIS 2018 Policy Memorandum (PM-602-0157)).

*id.*, and remanded the petitions to USCIS "to reconsider only whether the occupations qualify as 'specialty occupations' under the governing [regulations] without the requirement that employers provide non-speculative work assignments for the entire duration of a visa period." *Id.* at *19 n.14.

In light of *Itserve*, the Court finds that Mr. Venkatraman is very likely to prevail on the merits. It seems clear that the invalid "non-speculative work requirement" colored the agency's evaluation of his petition. For example, in discussing the legal standards governing its evaluation of the petition, the decision invoked the very requirement—to the exact word—that Judge Collyer found unjustified. *See* USCIS Decision at 3–4 ("[Y]ou must demonstrate that you have specific and non-speculative qualifying assignments in a specialty occupation for the beneficiary for the entire time requested on the petition."). And as discussed, the decision ultimately rejected the petition because it failed to prove "that the beneficiary will perform services in a specialty occupation for the requested period of intended employment." *Id.* at 10. As a result, Mr. Venkatraman, like the plaintiffs in *Itserve*, is seemingly entitled to a reconsideration of his petition without the illegal requirement. *See Stewart v. Azar*, 313 F. Supp. 3d 237, 272 (D.D.C. 2018) ("When an agency exercises discretion using the wrong legal standard, its action cannot survive.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). To be clear: the Court expresses no opinion as to what might be called the "ultimate" merits—whether Mr. Venkatraman is entitled to an H-1B visa. But he has demonstrated a strong likelihood of success on the merits that matter here—showing that the USCIS decision was arbitrary and/or capricious and that he is therefore entitled to a remand. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (explaining that when an agency action violates the

APA, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation").

In its briefing here, USCIS suggests that its denial was not specifically predicated on the 2018 Memorandum; rather, according to the agency, it more generally was based on the inconsistent and contradictory evidence provided by Mr. Venkatraman. *See* Def.'s Opp'n at 15 ("Inconsistencies in a record of proceedings has been a basis to deny immigration benefits that predates the 2018 memorandum." (citing cases)). But even assuming that inconsistency in the abstract is a valid basis for denying a petition, it is clear to the Court that the requirement found to be invalid in *Itserve* influenced the agency's decision-making here. *See PAM Squared at Texarkana, LLC v. Azar*, No. 18-cv-2542, 2020 WL 364782, at *5 (D.D.C. Jan. 22, 2020) ("[W]hen a mistake infects the agency's analysis or the outcome of the adjudication, it crosses the line into arbitrary and capricious territory.").

2. Likelihood of Irreparable Harm

In support of this prong, Plaintiffs make two general arguments. First, they point to economic harms affecting Synergy, representing that "Mr. Venkatraman is being pulled off a project," which in turn is disrupting critical work and endangering an important client relationship. Pls.' Mem. at 30. Second, they emphasize the harms specific to Mr. Venkatraman. They point out that, in the wake of the decision, Mr. Venkatraman is left without legal status, meaning that he may be subject to a three-year bar on readmissibility if he remains in the United States for more than 180 days after the decision. *Id.* at 2–3; *see also* U.S.C. § 1182(a)(9)(B)(i).[5]

---

[5] When a nonimmigrant remains in the United States beyond the time authorized by an H-1B visa, so-called "unlawful presen[ce]" begins to accrue. 8 U.S.C. § 1182(a)(9)(B)(i)(I). If an individual remains unlawfully present between 180 days and one year, he or she is deemed inadmissible to the United States for a period of three years. *Id.*; see also *Stellar IT Sols., Inc. v. USCIS*, No. 18-cv-2015, 2018 WL 6047413, at *11 (D.D.C. Nov. 19, 2018). However, if the

In sum, they argue, "[h]e cannot provide for himself or his family, cannot finish the critical project to which he has been assigned, cannot advance his career, and must live in a state of constant anxiety over whether he needs to uproot his family and school-age children to return to India, where his children barely remember living." *Id.* at 31.

"[T]he concept of irreparable harm does not readily lend itself to definition." *Ramirez*, 310 F. Supp. 3d at 31 (quoting *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007)). "Nonetheless, the D.C. Circuit has laid out 'several well known and indisputable principles'" that inform the analysis. *Id.* (quoting *Wis. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). "First, the injury must be both certain and great." *Wis. Gas. Co.*, 758 F.2d at 674. Second, that injury must be "so 'imminen[t] that there is a clear and present need for equitable relief to prevent irreparable harm.'" *League of Women Voters*, 838 F.3d at 8 (alteration in original) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). "And, finally, the injury must be 'beyond remediation.'" *Ramirez*, 310 F. Supp. 3d at 31 (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297).

Here, the Court focuses on the injuries specific to Mr. Venkatraman and agrees with Plaintiffs that they meet the required standard. The injuries flow directly from the legal framework governing H-1B petitions. Namely, because Mr. Venkatraman's petition was denied on February 14, 2020, he lacks lawful immigration status. That injury is certain, great, imminent, and beyond remediation, as it subjects him to the immediate potential of removal proceedings. *See Stellar IT Sols., Inc.*, 2018 WL 6047413, at *11  (finding that plaintiff who

---

sponsoring employer files an H-1B extension petition and that petition remains pending, a nonimmigrant is allowed to work and unlawful presence does not accrue. *See* 8 C.F.R. § 214.2(h)(2)(i)(H) (providing that aliens previously approved for H-1B status are "authorized to start . . . new employment" if a "nonfrivolous" petition to extend that H-1B status based on the new employment has been filed on behalf of the alien and remains pending).

was, as a result of H-1B denial, "without legal status at this moment and could, by law, be placed in removal proceedings at any time" had established irreparable harm). Additionally, after 180 days from the denial of this petition (by the Court's calculation, on August 13, 2020), he will he deemed inadmissible for the next three years. 8 U.S.C. § 1182(a)(9)(B)(i)(I). Accordingly, he must imminently begin making arrangements to vacate the country—or resign himself to facing life-altering legal consequences, with severe implications for his family and career. These highly disruptive consequences are similarly grave and beyond remediation. *See Ruiz-Diaz v. United States*, No. C07-1881RSL, 2008 WL 3928016, at *2 (W.D. Wash. Aug. 21, 2008) (holding that "halting the accrual of unlawful presence time and/or unauthorized employment for . . . class members" would "prevent irreparable harm to class members and their families"). USCIS argues here that the 180 day grace period means that any harm is not sufficiently "immediate," Def.'s Opp'n at 16, but the Court disagrees. In the face of such a definite harm, the Court need not wait some vague period of time (until, say, June or July) before acting. Said differently, Mr. Venkatraman is not facing "something merely feared as liable to occur at some indefinite time in the future." *Carabillo v. Ullico Inc. Pension Plan & Trust*, 355 F. Supp. 2d 49, 54 (D.D.C. 2004) (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931)). Rather, in light of the explicit statutory deadline, he faces a "clear and present need" for relief. *League of Women Voters*, 838 F.3d at 8.

### 3. Balancing the Equities and the Public Interest

The final two factors—the balancing of the harm to the opposing party and consideration of the public interest—are "pertinent in assessing the propriety of any injunctive relief" and the Court must weigh them with "serious consideration." *Winter*, 555 U.S. at 27, 32. However, these two factors merge when the government is the nonmoving party. *See Ramirez*, 310 F.

Supp. 3d at 32 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). As a result, the only remaining question is whether any significant "public consequences" would attend the issuance of an injunction. *Id.* at 32 (quoting *Winter*, 555 U.S. at 24).

Before conducting the required analysis, it is important to clarify the extent of the relief sought by Mr. Venkatraman. As discussed, his motion can be characterized as seeking three kinds of related relief: (1) rescission of the decision denying his petition, (2) prompt readjudication and approval of his petition, (3) postponement of the effective date of USCIS's decision and a grant of "temporary status and visa approval" pending review in this Court. Pls.' Mem. at 34. USCIS argues that much of this requested relief goes beyond the proper scope of a preliminary injunction. *See* Def.'s Opp'n at 18 ("Plaintiffs are attempting to obtain the same relief sought by the Complaint in advance of a full adjudication on the merits of his claims and without giving the Government the opportunity to fully defend the validity of its actions.").

The Court agrees with USCIS that the first two categories of relief are generally better left to the ultimate merits. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits"). Additionally, even if the Court agrees with Plaintiffs on the merits that the denial violated the APA, the normal remedy would be to vacate the decision and remand it for reconsideration—not to order that USCIS approve the petition. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. at 744. The postponement of the effective date of USCIS's denial presents different considerations, however. This kind of order—probably more properly classified as a stay rather than an injunction, *see Nken*, 556 U.S. at 428—is explicitly contemplated by the APA, which allows a reviewing court "to postpone the effective date of an agency action or preserve status or rights pending conclusion of the review proceedings." 5

U.S.C. § 705.  Such a stay can issue "[o]n such conditions as may be required and to the extent necessary to prevent irreparable injury."  *Id.*  Here, a stay would mean that Mr. Venkatraman's petition reverts to pending status, meaning that under 8 C.F.R. § 214.2(h)(2)(i)(H), he would retain lawful status and be able to begin new employment.  *See Stellar IT Sols.*, 2018 WL 6047413, at *12 ("Once the Court orders that the effectiveness of the agency's decision is stayed, the regulation does the rest of the work.").  The Court finds that such limited relief would effectively balance the equities at stake and serve the public interest.  The stay is effective retroactively to February 14, 2020, the date of USCIS's final decision, so that for the purpose of 8 U.S.C. § 1182(a)(9)(B)(i)(I), Mr. Venkatraman was never without lawful immigration status.

Normally, the Court would go no further in granting relief and leave the remaining questions to the merits.  However, given the recent decision in *Itserve Alliance*, which invalidated a requirement at the heart of USCIS's analysis of Mr. Venkatraman's petition, the Court also finds it appropriate to vacate USCIS's decision and remand it to the agency for reconsideration.  The Court expresses no view on the ultimate merits of his petition.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is granted in part and denied in part.  Specifically, USCIS's decision denying Mr. Venkatraman's petition is stayed and then vacated.  USCIS is ordered to reconsider the petition within sixty days in light of *Itserve Alliance, Inc. v. Cissna*, No. 18-cv-2350, 2020 WL 1150186 (D.D.C. Mar. 10, 2020).  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  May 5, 2020                                                               RUDOLPH CONTRERAS
                                                                    United States District Judge